**HO–CHUNK MANAGEMENT
CORPORATION and John
P. Koberstein, Plaintiffs,**

v.

**John W. FRITZ, in his official capacity as Deputy Secretary of Indian Affairs, United States Department of the Interior; William Clark, in his official capacity as Secretary of the Interior; Earl Barlow, in his official capacity as Minneapolis Area Director of the Bureau of Indian Affairs, United States Department of the Interior; United States Department of the Interior, Bureau of Indian Affairs; and United States of America, Defendants.**

No. 84–C–845–S.

United States District Court,
W.D. Wisconsin.

June 27, 1985.

John P. Koberstein, Madison, Wis., for plaintiffs.

Jeffrey M. Anderson, Asst. U.S. Atty., Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiffs Ho-Chunk Management Corporation and John P. Koberstein bring this action pursuant to 5 U.S.C. § 701 for judicial review of the defendant Secretary's final decision under 25 U.S.C. § 81 to disapprove Ho-Chunk's July 9, 1983 bingo management contract with the Wisconsin Winnebago Business Committee because it was not in the best interests of the Wisconsin Winnebago Tribe. The decision of the Secretary is vacated and the case remanded for further proceedings.

This matter is before the Court after a June 6, 1985 trial to the Court sitting without a jury. Pursuant to Rule 52, Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Wisconsin Winnebago Business Committee (WWBC) is the duly constituted governing body of the Wisconsin Winnebago Indian Tribe, a federally-recognized Indian Tribe by the terms of the Indian Reorganization Act of 1934.

2. Plaintiff John P. Koberstein is a Madison, Wisconsin attorney who also serves as president of plaintiff Ho-Chunk Management Corporation, a Wisconsin corporation of which he is sole stockholder.

3. On April 10, 1984, plaintiffs submitted a bingo management contract that had been entered into by Ho-Chunk and the WWBC on July 9, 1983 to Earl Barlow, Minneapolis Area Director for the Bureau of Indian Affairs, for his review and approval pursuant to 25 U.S.C. § 81.

4. Previously, the WWBC had sued Ho-Chunk and Koberstein in this Court in *WWBC v. Koberstein*, Case No. 83–C–1014, to terminate that agreement on numerous grounds. On April 2, 1984, the Court found the contract null and void effective June 29, 1984 by virtue of the parties' failure to obtain the approval of the Secretary of the Interior as required by 25 U.S.C. § 81.

5. The WWBC had also, by resolution passed on November 12, 1983, terminated a general counsel agreement that it had entered into on July 9, 1983 with John Koberstein. The general counsel agreement on its face required approval from the Secretary of the Interior, but that approval had apparently never been sought. The record is silent as to whether Koberstein ever performed any services under that agreement.

6. In their submission to Barlow, plaintiffs asserted that the contract should be approved for numerous reasons, including the WWBC's initial support of the agreement, their own ongoing performance under the contract (which included Koberstein's pledge of personal assets to secure a $250,000 loan to the tribe), and finally the tribe's interest in continued employment for the scores of tribal members employed by the bingo operation.

7. For its part, the WWBC, through its executive committee and Washington, D.C. attorney Reid Peyton Chambers, contended that approval of the contract would not be in the best interests of the tribe and urged Barlow to disapprove the contract. In a memorandum submitted to Barlow on May 3, 1984, apparently *ex parte*, Chambers argued forcefully that the contract between the WWBC and Ho-Chunk was "virtually a contract of adhesion" that the committee would not have entered into but for "the plain and egregious conflict-of-interest (sic) between John Koberstein's status as a principal in Ho-Chunk and as general counsel for the Tribe at the time the agreement was executed." Chambers alleged that Koberstein had failed to inform the WWBC in writing of the potential for a conflict of interest arising from his dual roles as general counsel and president of Ho-Chunk, and inferred that he was in fact acting as general counsel for the tribe with respect to the bingo management agreement at the time the parties negotiated and entered into the contract. Chambers contended that Koberstein's conduct breached his ethical obligations to the tribe and enabled him to exert undue influence over the WWBC, which resulted in a fundamentally unfair, improvident agreement that should be disapproved. Beyond his bare assertions of fact and the contract itself, Chambers offered no evidence in support of his allegations.

8. On May 18, 1984, Area Director Barlow issued his decision disapproving the bingo management contract between Ho-Chunk and the WWBC. Barlow stated that he had considered the positions of both Ho-Chunk and the WWBC and had reached the conclusion that approval of the contract would not be in the best interests of the tribe. Barlow emphasized that he was not substituting his business judgment for the initial judgment of the tribe concerning whether the contract was a "good deal," but was instead deferring to the Tribe's subsequent repudiation of the contract. Barlow found the repudiation justified because the agreement's terms allowed Ho-Chunk more-than-equitable participation in, and control over, tribal land, resources, and economic development, and could only be viewed as arising from Koberstein's undue influence over the tribe. Concerning the latter, Barlow wrote,

> There is nothing in the record to suggest that on or before July 9, 1983 Mr. Koberstein disclosed that there was even a potential conflict of interest between his duties as Tribal attorney and his position as president and sole stockholder of Ho-Chunk Management. By his failure to disclose the conflict prior to execution of the Agreement by the WWBC, Koberstein took unfair advantage of the Tribe at a time when it was most susceptible to his influence. It is this fundamental unfairness which the Tribe later recognized and acted to eliminate. Similarly, my conclusion that the circumstances attending the execution of the Agreement were unfair and not in the best interests of the Tribe causes me to disapprove the agreement.

9. On July 25, 1984, plaintiffs filed their appeal of Barlow's decision disapproving the contract, together with supporting materials. Included was the December 12, 1983 affidavit of WWBC member James C. Greendeer, generated in *WWBC v. Koberstein, supra*, in which Greendeer indicated that Koberstein had informed the Business Committee on or before July 9, 1983 of the potential conflict that could arise from his involvement in Ho-Chunk and his role as general counsel for the tribe, that Koberstein had advised the Committee to seek advice of independent counsel concerning the bingo management agreement, and that Koberstein had never advised the WWBC in his capacity as tribal attorney concerning the bingo management contract. Similarly, Greendeer, Parmenton Decorah, and Dillard Cloud, in an affidavit executed March 5, 1984 in the same case, swore that although John Koberstein had represented a coalition comprised of themselves and three other persons who had successfully obtained seats on the WWBC in June 1983, Koberstein had never acted as tribal attorney in connection with the

bingo management agreement adopted on July 9, 1983, and that the contract had been negotiated, in effect, at arm's length, with both sides engaging in give and take prior to its adoption.

10. Although the plaintiffs' appeal of Barlow's decision was not timely under 25 C.F.R. Part 2, Deputy Assistant Secretary of the Interior John Fritz granted plaintiffs a retroactive extension to July 26, 1984, and considered their appeal on its merits.

11. On September 11, 1984, Deputy Assistant Secretary Fritz issued an order affirming Area Director Barlow's decision disapproving plaintiffs' contract with the WWBC. Fritz considered the issues on appeal to be whether Barlow had properly considered the conflict of interest issue in light of the affidavits submitted by plaintiffs with their appeal and whether it was proper for Barlow to have relied upon the Business Committee's disavowal of the contract as a ground for disapproval. Fritz indicated that he had reviewed the record and the positions of the parties and was rejecting Ho-Chunk's assertion that John Koberstein had no conflict of interest at the time the contract was entered into because, "under the circumstances, even a clear disclosure would not, in my view, remove the taint of an existing conflict." Moreover, Fritz found that the position of the Tribe's governing body with respect to the contract was extremely relevant to the determination of whether the contract was in the Tribe's best interests. Fritz stated that he was affirming Barlow's decision for all the reasons enunciated in that decision.

12. Deputy Assistant Secretary of the Interior Fritz's decision was the final decision of the secretary of the Interior.

13. In his deposition testimony of May 8, 1985, Deputy Assistant Secretary Fritz, on the advice of counsel, declined to answer whether he would have reached the same decision to affirm Barlow's decision disapproving the Ho-Chunk bingo management contract had the conflict of interest issue not been a part of that decision.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this action for judicial review of the final decision of the defendant secretary entered on September 11, 1984 to disapprove the bingo management contract submitted for his approval on April 10, 1984 by plaintiff Ho-Chunk Management Corporation pursuant to 25 U.S.C. § 81.

2. The standard of review in this case is whether the decision of the Secretary was arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law in light of his fiduciary duty under 25 U.S.C. § 81 to make decisions in the best interest of the particular Indian Tribe involved. 5 U.S.C. § 706(2)(A), *Kenai Oil and Gas, Inc. v. Dept. of the Interior*, 671 F.2d 383, 386 (10th Cir.1982).

3. Because Deputy Assistant Secretary John Fritz, the final decisionmaker in this matter, addressed only two issues directly, preferring to rely to some degree on the findings and rationale of the intermediate decisionmaker rather than conducting an exhaustive *de novo* review of the entire record, the Court determines that the administrative record to be reviewed includes all matters that were brought to the attention of either Fritz or Area Director Barlow, i.e. the materials produced by Barlow in response to plaintiffs' discovery requests, as well as the certified administrative record filed on April 23, 1985. *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982); *Lloyd v. Illinois Regional Transp. Authority*, 548 F.Supp. 575 (N.D.Ill.1982).

4. Matters outside that record, including Fritz's deposition testimony and the testimony of Parmenton Decorah and John Koberstein at trial, have not been considered by the Court except as to apportioning that relief which may be proper.

5. The Court is of the opinion that any one of the several factors relied upon by Barlow and Fritz in disapproving the bingo management contract entered into between Ho-Chunk and the WWBC on July 9, 1983 would have been sufficient to justify their conclusion that the contract was not in the

best interests of the tribe, given an adequate basis of fact in the record.

6. For example, the subsequent repudiation of the contract by the WWBC itself would be a sufficient basis for the Secretary to conclude that the contract was not in the best interest of the tribe. A determination to defer to the recommendation of a tribal government, consistent with the Secretary's practice of dealing on a government-to-government basis with tribes, would be one rational way to further the Secretary's legitimate policy in favor of tribal self-determination, and would foreclose the sort of government-by-referendum that the plaintiffs would have the Court impose on the Winnebago Indian Tribe and upon the Secretary of the Interior in deciding the best interests of a tribe in any given circumstances. Certainly, it could be argued that a decision approving the contract involved in this particular case, and thereby forcing the WWBC to abide by its July 9, 1983 decision, would also further that policy, but where an agency has chosen one rational means of achieving a policy goal over another, it is not for a reviewing court to substitute its choice for the Agency's. Likewide, based on the record before the Court, Barlow's finding that the contract was too favorable to Ho-Chunk, justified as it is by comparison with other contracts of record, would itself have been sufficient to support disapproval. That judgment was clearly within the wide range of discretion accorded the Secretary under 25 U.S.C. § 81 and similar statutes.

7. The difficulty with the Secretary's decision, however, is that there is absolutely no competent evidence of record to support the finding of his decisionmakers that John Koberstein was laboring under a conflict of interest in negotiating and contracting with the WWBC. Instead of conducting even a minimal investigation into the actual circumstances surrounding the negotiation and adoption of the contract, Area Director Barlow simply adopted as true the assertions of fact and law offered by counsel for the WWBC, Mr. Chambers, in justification of the Business Committee's repudiation of the contract and in support of its request that the contract be disapproved. Those assertions, of which plaintiffs apparently had little notice prior to Barlow's decision, were also accepted at face value by Deputy Assistant Secretary Fritz, who paid mere lip service to the plaintiffs' affidavits which did, as a matter of law, undercut both the factual and legal assertions made by Chambers and the WWBC.

8. To the extent that an administrative agency's ultimate decision on a matter consigned to its discretion necessarily depends upon a factual finding that proves to be without adequate basis in the administrative record, that decision must be viewed as an abuse of discretion or as arbitrary and capricious.

9. Because the Court is unable in this case to determine whether the Secretary would have disapproved the bingo management contract in question without the unjustified conflict-of-interest finding, the case must be remanded to the Secretary for further consideration.

10. Upon remand, the Secretary is free to conduct an investigation into the circumstances surrounding the negotiation and adoption of the contract or, if he decides that a determination of the conflict issue is unnecessary to his ultimate determination of whether the contract is in the Tribe's best interests, decide as he sees fit based on other relevant factors.

Accordingly,

### ORDER

IT IS ORDERED that the final decision of the defendant Secretary disapproving the bingo management contract submitted by plaintiffs pursuant to 25 U.S.C. § 81 is hereby VACATED and the case REMANDED for further proceedings consistent with the dictates of the above memorandum.